# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARIANA ALVARADO TAYLOR** | **CIVIL ACTION** |
| **VERSUS** | **No. 16-15890** |
| **CLARKE POWER SERVICES ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by plaintiff Mariana Alvarado Taylor regarding the liability of Bridgestone Americas Tire Operations ("Bridgestone"), Crescent Crown Distributing ("CCD"), Amerit Fleet Solutions ("Amerit"), and the decedent Rahn Taylor, Sr. For the following reasons, the motion is granted in part and denied in part.

## I.

On July 22, 2015, Rahn Taylor, Sr. was killed in an automobile crash on Interstate 12 between Lacombe and Slidell, Louisiana. At the time of the accident, Mr. Taylor was driving a tractor-trailer owned by his employer, CCD, which had contracted with VehiCare for the inspection and maintenance of its tractor-trailer fleet. The crash allegedly resulted from a sudden tire failure on the right front steering axle. Bridgestone manufactured the failing tire.

Mr. Taylor's wife brought the present lawsuit on behalf of herself and her minor children claiming that VehiCare was negligent in failing to properly inspect and maintain the tractor-trailer driven by her husband at the time of his death. She

also asserted products liability claims against Bridgestone, which have apparently been settled.

Specifically, Mrs. Taylor alleges that VehiCare assumed a duty to monitor CCD's fleet; that it conducted an initial fleet inspection but failed to follow up on what it learned as a result of this inspection; that it failed to fulfill its duty to set up a 90-day preventive maintenance inspection schedule and to conduct a preventive maintenance inspection of the tractor-trailer driven by Mr. Taylor; and that it failed to replace the tire that blew on the day of Mr. Taylor's accident.[1]

Mrs. Taylor contends that these failures, among others, render VehiCare solely liable for Mr. Taylor's death. Accordingly, she seeks judgment as a matter of law that fault cannot be apportioned to (1) Bridgestone, which manufactured the failing tire; (2) Amerit, which oversaw maintenance of CCD's fleet prior to VehiCare; (3) CCD, which employed Mr. Taylor and ostensibly loaded his tractor-trailer and dispatched it for delivery prior to his crash; and/or (4) Mr. Taylor, who was operating the tractor-trailer at the time of the accident. VehiCare opposes Mrs. Taylor's motion and argues that, under comparative fault principles, liability for Mr. Taylor's accident may be apportioned to each of the aforementioned entities.

## II.

### A.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines

---

[1] *See* R. Doc. No. 88-3, at 4–31.

that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . ., the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical and Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quotation omitted).

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## B.

Louisiana law provides that

> [i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute . . . or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

La. Civ. Code art. 2323(A). This statute applies "to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability." La. Civ. Code art. 2323(B). Furthermore, when a defendant urges the liability of non-parties, it falls to him to establish that liability. *Haney v. Francewar*, 588 So. 2d 1172 (La. Ct. App. 1st Cir. 1991). In the summary judgment context, this requires the defendant to "to point to some record evidence demonstrating a contested issue of material fact." *Augman v. Seacor Marine, LLC*, No. 07-cv-1508, 2007 WL 4326910, at *1 (E.D. La. Dec. 6, 2007) (Vance, J.).

# III.

Mrs. Taylor contends that fault may not be apportioned to Bridgestone, Amerit, CCD, or Mr. Taylor. The Court considers her arguments with respect to each of these entities in turn.

## A.

The parties do not dispute that Bridgestone manufactured the tire that failed on the tractor-trailer operated by Mr. Taylor. They do dispute, however, whether a manufacturing defect in the tire contributed to Mr. Taylor's accident.

VehiCare notes that both its expert and Mrs. Taylor's expert have identified manufacturing defects in the tire.[2] VehiCare's tire expert, Richard Sherman, observed that

> [t]he pull towards the passenger side [Mr.] Taylor mentioned . . . is consistent with a tire's behavior due to conicity. Conicity occurs when the belt package and carcass centerlines are not centered with each other during the assembly of the tire. The behavior of the tire as it rolls would be akin to a Styrofoam cup rolling on its side. The misaligned belts would cause a tire to roll to the left or right like a cone on a flat surface. In addition to a pull, a tire with conicity will experience rapid tread wear in one shoulder of the tire relative to the opposite side. Also, tires with conicity will cause one sidewall to flex more and generate rubber reversion and subsequent delamination of the internal components. *The [] tire contained evidence of component separations indicating a manufacturing issue.*[3]

Similarly, Mrs. Taylor's tire expert, Brian Darr, cited possible manufacturing defects in the tire. He stated that

---

[2] R. Doc. No. 95, at 6.
[3] R. Doc. No. 95-2, at 10 (emphasis added).

> [t]he accident sequence was consistent with being initiated by a tread and outer belt separation failure of the [] right front tire that occurred in the left lane near the center line. The tread and outer belt separation resulted in the tire violently deflating (blowout). This caused increased drag on the right front position which caused the [tractor-trailer] to pull to the right into the right lane.[4]

Darr also noted that

> [t]he subject tire had chafe and polish present on the serial side. Chafe and polish was an indicator of internal separations. A thin inner liner would have caused or contributed to these separations. The inner liner of the subject tire was measured at 0.054 inches thickness. This was too thin for a tire of this size and high inflation pressure requirements. A thin inner liner with not enough butyl rubber would have caused or contributed to the internal separations by allowing accelerated oxidative degradation and ultimately the tread and outer belt separation. *This would be a manufacturing and/or design defect.*[5]

Darr further linked these internal separations, which he attributed to a manufacturing defect, to the uneven tread on the failing tire, which Mrs. Taylor argues contributed to the blow out.[6] Darr found that "[o]ne side of the tread had much higher wear than the other side. This was present prior to the collision. This could have been due to the vehicle alignment or more likely it was due to the internal separations on that same serial side of the tire."[7]

Despite her own expert identifying a manufacturing defect in the failing tire, Mrs. Taylor now insists that, as a matter of law, no comparative fault may be

---

[4] R. Doc. No. 95-1, at 3.
[5] *Id.* at 5 (emphasis added).
[6] *See* R. Doc. No. 88-3, at 6–11.
[7] R. Doc. No. 95-1, at 13.

attributed to Bridgestone, the tire manufacturer. This argument is particularly baffling, considering Mrs. Taylor asserted various products liability claims against Bridgestone in this very case.[8]

Nevertheless, Mrs. Taylor contends that no fault can be assessed against Bridgestone because VehiCare cannot meet the requirements set forth in the Louisiana Products Liability Act ("LPLA"). First, Mrs. Taylor argues that VehiCare cannot show that the injury in this case arose from a "reasonably anticipated use" of the tire.[9] This argument borders on the frivolous. As VehiCare points out, "[i]t is unclear how the use of a truck tire, as a tire, on a truck, could not be a reasonably anticipated use."[10] At the very least, there is a genuine dispute as to whether the tire was engaged in a reasonably anticipated use at the time of Mr. Taylor's crash. Summary judgment on this score is, therefore, precluded. Accordingly, "[t]he issue of reasonably anticipated use [will be] left for our presumptively trustworthy, traditional fact-finder: the jury." *McDaniel v. Terex USA, LLC*, 466 Fed. App'x 365, 374 (5th Cir. 2012).

Next, Mrs. Taylor argues that Bridgestone is shielded from apportionment of fault because any manufacturing defects in the tire were not the proximate cause of Mr. Taylor's accident. VehiCare's negligence, she claims, was an intervening and superseding cause of the crash.[11] However, causation determinations in a case such

---

[8] R. Doc. No. 15. Mrs. Taylor has purportedly reached a compromise with Bridgestone regarding its role in Mr. Taylor's accident.
[9] R. Doc. No. 88-3, at 34.
[10] R. Doc. No. 95, at 8.
[11] R. Doc. No. 88-3, at 38.

as this are best left to the jury.  Again, as VehiCare notes, "a [reasonable] jury could conclude that the tire was *both* defective and poorly maintained, and find liability on the part of *both* Bridgestone[] and [] VehiCare."[12]  In other words, there is a genuine dispute as to whether a manufacturing defect present in the failing tire caused or contributed to Mr. Taylor's accident.  Indeed, Mrs. Taylor's own expert has suggested that such may be the case.  Summary judgment as to Bridgestone is, therefore, inappropriate.[13]

## B.

Mrs. Taylor next argues that Amerit bears no fault in relation to Mr. Taylor's accident.  Amerit was the fleet maintenance contractor for CCD immediately prior to VehiCare.[14]  In April 2015, Amerit terminated its relationship with CCD and took with it all prior maintenance records regarding CCD's fleet.[15]  VehiCare entered into a fleet services agreement with CCD shortly thereafter.[16]  Under the terms of that agreement, a fleet inspection was to occur every 90 days.[17]  VehiCare conducted an

---

[12] R. Doc. No. 95, at 8.

[13] Mrs. Taylor also emphasizes the fact that VehiCare has not put forth an "alternative design" that Bridgestone could have used in fashioning the tire.  This argument is misplaced.  The LPLA's alternative design framework applies to *design* defect claims. However, as far as the Court can surmise, VehiCare's arguments regarding Bridgestone's potential liability suggest that there were *manufacturing* defects in the tire that caused or contributed to Mr. Taylor's accident.  Identification of an alternative design is not required with respect to such claims.  La. Rev. Stat. §§ 9:2800.55, 9:2800.56.

[14] R. Doc. No. 95, at 14.

[15] *Id.*; *see* R. Doc. No. 88-3, at 44.

[16] *See* R. Doc. No. 95, at 14.

[17] R. Doc. No. 88-9, at 14.

initial inspection of CCD's fleet on April 14, 2015 and assumed its duty of care over CCD's fleet the following day.[18]

VehiCare maintains that, once it assumed this duty, Amerit's removal of records "seriously hampered [its] ability to transition and take over fleet maintenance for CCD," including its efforts to establish preventive maintenance schedules and conduct inspections on CCD's fleet.[19] Mrs. Taylor counters that—given its initial inspection on April 14, 2015—VehiCare had adequate knowledge of the problems with the tire on Mr. Taylor's tractor-trailer but nevertheless failed to replace the tire or schedule the tractor-trailer for maintenance. Additionally, she notes that, in any event, VehiCare had "supplanted Amerit by more than the 90-day period within which VehiCare had agreed to perform preventive maintenance inspections on the fleet vehicles."[20] Accordingly, she argues that "[i]t does not appear that any records from Amerit or their absence are material in any way."[21] The Court agrees.

VehiCare assumed its duty to CCD on April 15, 2015. That duty required VehiCare to perform preventive maintenance inspections every 90 days, with or without any records from Amerit. Mr. Taylor's accident occurred on July 22, 2015— 99 days after VehiCare conducted its initial inspection and 98 days after VehiCare assumed its express duty to CCD. During that period, Mrs. Taylor claims, VehiCare

---

[18] R. Doc. 88-12, at 41; R. Doc. 88-6, at 263.
[19] R. Doc. No. 95 at 14–16.
[20] R. Doc. No. 88-3, at 44.
[21] *Id.* at 45.

did not conduct any further inspection or replace the tire. Hence, Amerit's records are immaterial.

VehiCare assumed a duty to inspect CCD's fleet every 90 days, irrespective of the records it had in its possession. Mrs. Taylor insists that such an inspection did not occur, at least not with respect to the tractor-trailer driven by Mr. Taylor at the time of his crash. Thus, she claims VehiCare breached its duty. The Court does not see how VehiCare might place any blame on Amerit, considering that it was under an independent duty to conduct an inspection within 90 days and allegedly failed to meet that duty. As Mrs. Taylor observes, "[i]t is unimaginable how possession of Amerit's records would have prompted VehiCare to schedule or perform service on Taylor's tractor, given the lack of such action over the 99 days following VehiCare's takeover."[22] VehiCare, then, has failed to raise a genuine dispute of material fact as to Amerit's liability for Mr. Taylor's accident. Thus, summary judgment with respect to Amerit is appropriate.

## C.

Mrs. Taylor also asserts that no fault for Mr. Taylor's accident can be attributed to CCD. The night before his accident, Mr. Taylor apparently returned to CCD's facility, where he proceeded to park his tractor-trailer in an out-of-service area along a fence, leaving the keys inside.[23]

---

[22] R. Doc. No. 105, at 10.
[23] R. Doc. No. 95, at 10–11; R. Doc. No. 88-3, at 49, 52.

Mrs. Taylor argues that "VehiCare . . . assumed all duties of care as to the safety and maintenance of CCD's truck . . . [and therefore] cannot cast comparative fault on CCD for any alleged breach of CCD's non-existent duty."[24]  She further contends that VehiCare's negligence allowed Mr. Taylor's truck to be moved and loaded for delivery the following day.[25]

VehiCare argues that "[Mr.] Taylor parked his vehicle in the out-of-service area along the fence, the night before the accident, and that vehicle was moved and loaded without VehiCare's approval by CCD personnel prior to VehiCare having an opportunity to inspect and service the vehicle in accordance with Mr. Taylor's complaints."[26]  VehiCare notes, as does Mrs. Taylor, that the exact person or persons who moved Mr. Taylor's truck and loaded it for delivery have yet to be identified. Nonetheless, VehiCare argues that a reasonable jury could conclude that "CCD's actions in moving Mr. Taylor's truck from an out-of-service area caused or contributed to the accident and that fault should be allocated to CCD."[27]  Here again, the Court agrees.

Genuine disputes of material fact exist as to who moved and loaded Mr. Taylor's tractor-trailer the night before his accident and whether that action, which led to the tractor-trailer being presented to Mr. Taylor as drivable the following morning, contributed to Mr. Taylor's fatal crash.  A reasonable jury could conclude

---

[24] R. Doc. No. 88-3, at 48.
[25] *Id.* at 50.
[26] R. Doc. No. 95, at 10.
[27] *Id.* at 11.

that a CCD employee improperly removed Mr. Taylor's truck from an out-of-service area and tendered it for loading. Mrs. Taylor's arguments for summary judgment regarding CCD's liability, therefore, fail.

### D.

Finally, Mrs. Taylor maintains that no fault can be attributed to Mr. Taylor, who was operating the tractor-trailer at the time of the crash. She claims that Mr. Taylor had repeatedly complained, in writing and orally, of problems with his truck and that nothing had been done about these issues.[28] She contends that upon arriving at work on the morning of the accident and finding his tractor-trailer loaded and ready to drive, Mr. Taylor made a reasonable choice to operate the vehicle and set out on his delivery route.[29] She further asserts that Mr. Taylor crossed the middle line and came into contact with another vehicle because of a pull in his truck, of which he had complained before.[30]

By contrast, VehiCare argues that Mr. Taylor

> failed to (1) fill out an electronic [driver-vehicle inspection report] in accordance with the policies of his employer; (2) report any service issues to his supervisor, despite opportunity, prior to driving his truck on the date in question; and (3) either failed to perform a walk around, or having performed a walk around, drove the truck despite the fact that it had not been serviced.[31]

---

[28] R. Doc. No. 88-3, at 51.
[29] *Id.* at 52.
[30] *See id.* at 53.
[31] R. Doc. No. 95, at 13.

VehiCare further notes—and Mrs. Taylor does not dispute—that, based on the tractor-trailer's GPS system, Mr. Taylor was traveling in excess of the speed limit when the accident occurred.[32] Moreover, VehiCare cites an expert report, which notes that a possible scenario was that "Mr. Taylor was traveling behind the [waste truck] and began a lane change not realizing the speed differential between the two trucks and ultimately struck the left rear of the [waste truck]."[33] That expert further states,

> It is my opinion Mr. Taylor was inattentive or distracted while driving east on Interstate 12. Mr. Taylor's inattention caused the truck he was driving to strike the left rear corner of the [waste truck] with the right front corner of his truck. This collision caused the right front tire of [Mr. Taylor's truck] to fail and ultimately the resultant fatal crash.[34]

If credited, this version of events would allow a reasonable jury to find comparative fault on the part of Mr. Taylor. Summary judgment regarding his potential fault is, therefore, inappropriate.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment is **GRANTED** with respect to Amerit but **DENIED** with respect to Bridgestone, CCD, and Mr. Taylor.

New Orleans, Louisiana, October 31, 2017.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[32] *Id.*
[33] R. Doc. No. 95-5, at 22.
[34] *Id.* at 22-23.