UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| MARIANA ALVARADO TAYLOR | CIVIL ACTION |
|---|---|
| VERSUS | No. 16-15890 |
| CLARKE POWER SERVICES, INC. ET AL. | SECTION I |

## ORDER & REASONS

Before the Court is a motion for partial summary judgment filed by defendants Clarke Power Services, Inc. d.b.a. VehiCare ("VehiCare") and its insurer Continental Casualty Company ("CCC") regarding the plaintiff's ability to recover certain medical expenses for herself and her minor children. For the following reasons, the motion is granted.

### I.

On July 22, 2015, Rahn Taylor was killed in an automobile crash on Interstate 12 between Lacombe and Slidell, Louisiana. At the time of the accident, Taylor was driving a tractor-trailer owned by his employer, Crescent City Distributing ("CCD"), which had contracted with VehiCare for the inspection and maintenance of its tractor-trailer fleet. The crash allegedly resulted from a sudden tire failure on the right front steering axle.

Taylor's wife filed the present lawsuit on behalf of herself and her minor children, claiming that VehiCare was negligent in failing to properly inspect and maintain the tractor-trailer driven by her husband at the time of his death. Mrs. Taylor seeks a variety of damages including physical pain and suffering, emotional

distress and mental anguish, loss of love and affection, loss of earnings and/or support, and loss of consortium. As pertinent here, she also seeks to recover certain medical and medical-related expenses for herself and her minor children. In this regard, she has produced three life care plans that contain detailed estimates of her family's future medical and medical-related needs.

The life care plan for Mrs. Taylor provides for $11,389 for various evaluations; $30,550 for future medical care; $485,100 for home child care services; $389,363.80 for medications; $518,250 for plan administration; and $167,600 for therapeutic modalities such as psychotherapy and family therapy for a total of $1,602,252.80.[1] The life care plan for Mrs. Taylor's son, Rahn, Jr., provides for $19,373 for various evaluations; $38,493 for future medical care; $22,990 for home care case management; $344,841.04 for medications; $465,500 for plan administration; and $282,466 for therapeutic modalities including speech therapy, psychotherapy, occupational therapy, and tutorial services for a total of $1,173,663.04.[2] The life care plan for Mrs. Taylor's daughter, Rhiana, who is autistic and suffers from a genetic disorder, provides for $48,198 for various evaluations; $43,992 for future medical care; $31,253,125 for facility care; $2,369,235 for home attendant care and case

---

[1] R. Doc. No. 80-5. Of these amounts, more than $13,000 is allotted for dental care and $444,750 is reserved for "plan management," which is described as "full accounting services including tax filings."
[2] R. Doc. No. 80-6. Of these amounts, more than $16,000 is allotted for dental care and $372,500 is reserved for "plan management," including accounting services and tax filings. The amounts also include $93,000 for future plan updates, $13,000 for speech therapy, and $80,784 for tutoring services.

2

management; $974,500 for plan administration; and $596,376 for therapeutic modalities including speech therapy, psychotherapy, occupational therapy, and tutorial services for a total of $35,285,426.[3] The total for all three life care plans is a staggering $38,064,341.84.

VehiCare and CCC now seek summary judgment that these anticipated expenses are not recoverable as damages in a wrongful death action.

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point

---

[3] R. Doc. No. 80-7. Of these amounts, more than $18,000 is allotted for dental care, and $858,000 is reserved for plan management including full accounting services and tax filings. The amounts also include $106,500 for future plan updates, $106,560 for speech therapy, and $104,544 for tutoring services. With respect to the facility care costs exceeding $31 million, the life care plan notes: "At age 21, transition into a residential community to life expectancy. Per day rates range up to and above $1,500/day depending on severity of disability, diagnoses, and co-morbidities. Current cost illustrated at $1,500/day subject to modification." The attendant care line item states: "Attendant Care services are recommended full time given diagnosis of autism/developmental disorder and epilepsy until age 21, then transition into a residential community to life expectancy. Budget illustrated at $18.50/hr."

3

out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . ., the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical and Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quotation omitted).

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## III.

Under Louisiana law, "[i]f a person dies due to the fault of another, suit may be brought by [the surviving spouse and . . . children of the deceased] to recover damages which they sustained as a result of the death." La. Civ. Code art. 2315.2. "Wrongful death damages are meant to compensate the designated survivors for their loss of the decedent." *Salama v. State of La.*, 211 So. 3d 396, 399 (La. Ct. App. 1st Cir. 2017). "The elements of damage for a wrongful death action are loss of love, affection, companionship, services, support, medical expenses and funeral expenses. Additionally, the courts have allowed damages in wrongful death actions for mental pain, suffering, and distress resulting from the death of the victim."[4] *Hill v. Shelter Mut. Ins. Co.*, 935 So. 2d 691, 695 (La. 2006). Furthermore, "[d]amages awarded for wrongful death are general damages since the value of the loss is not subject to a pecuniary calculation." *Leary v. State Farm Mut. Ins. Co.*, 978 So. 2d 1094, 1099 (La. Ct. App. 3d Cir. 2008) (quoting *Patrick v. Employers Mut. Cas. Co.*, 745 So. 2d 641, 652 (La Ct. App. 3d Cir. 1999)); *Vallien v. State ex rel. Dep't of Transp. And Dev.*, 812 So. 2d 894, 901 (La. Ct. App. 3d Cir. 2001).

Mrs. Taylor argues that future medical and medical-related expenses for herself and her children are compensable as part of her wrongful death claim. The

---

[4] Used in this context, "medical expenses" refers to the medical expenses of the decedent. *See, e.g.*, *Archie v. Bd. of Supervisors of Louisiana State Univ.*, 543 So. 2d 1348, 1354 (La Ct. App. 1st Cir. 1989) (holding that failure to award damages for treatment the decedent received in the emergency room was error); *Argus v. Scheppegrell*, 489 So. 2d 392, 395 (La Ct. App. 5th Cir. 1986) (awarding damages of medical expenses for the hospitalization of the decedent).

Court is not so persuaded. The case law regarding this particular issue, though sparse, compels the conclusion that special damages for medical and medical-related care of the claimant are not recoverable in a wrongful death action.[5]

---

[5] Mrs. Taylor argues that the body of case law relied on herein is of limited value, as it was developed prior to the Louisiana legislature amending its general negligence statute. R. Doc. 96, at 2–3. This argument, however, does not extend as far as Mrs. Taylor might like.

In 1999, the Louisiana legislature amended Article 2315 of the Civil Code to add the following language: "Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease." Mrs. Taylor maintains that "[i]n light of [this] amendment, in general tort claims, the [l]egislature clearly contemplated, and approved of, future medical damages that were directly related to a mental injury." R. Doc. 96, at 3. In the Court's view, this reading of the amendment's intent is overly broad.

The legislative history and case law make clear that the amendment was intended to serve a specific purpose—namely, to bar the recovery of medical monitoring damages. In the year prior to the amendment, the Louisiana Supreme Court held that "the reasonable cost of medical monitoring is a compensable item of damage under Civil Code article 2315, provided that a plaintiff satisfies [certain] criteria." *Bourgeois v. A.P. Green Indus., Inc.*, 716 So. 2d 355, 360 (La. 1998) ("*Bourgeois I*"). Actions for medical monitoring, which most often arise in the toxic tort context, "seek[] to recover the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm." *Id.* at 357.

Following the *Bourgeois I* decision, the Louisiana legislature enacted Act 989, which amended Article 2315 to add the aforementioned language Mrs. Taylor relies on here. Section 2 of Act 989 states: "The provisions of this Act are interpretative of Civil Code Article 2315 and are intended to explain its original intent, notwithstanding the contrary interpretation given in [*Bourgeois I*] and all cases consistent therewith." In other words, Act 989 "essentially purport[ed] to 'overrule'" *Bourgeois I*. *Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1254 (La. 2001) ("*Bourgeois II*"). As the Louisiana Supreme Court later noted, "Act 989 of 1999 was enacted with the *exclusive purpose* of excluding medical monitoring from the types of damages recoverable under Art. 2315 unless said medical monitoring is directly related to a manifest physical or mental injury or disease." *Landry v. Avondale Indus., Inc.*, 864 So. 2d 117, 123 n.2 (La. 2003) (emphasis added). Accordingly, Mrs. Taylor's argument—that, with the 1999 amendment of Article 2315, the Louisiana

6

In *Lang v. Prince*, 447 So. 2d 1112 (La. Ct. App. 1st Cir. 1984), an 18-year old male was killed in a car crash. Following her son's death, the decedent's mother suffered substantial mental and physical illness and was awarded $150,000 in general damages. *Id.* at 1119. In addition, she was awarded special damages of $2,368.10 for her own medical bills, $20,000 for future medical expenses, and $25,000 for lost wages. *Id.* The Louisiana First Circuit Court of Appeals affirmed the general damages award but vacated the special damages award, citing *LaPlace v. Minks*, 174 So. 2d 895 (La. Ct. App. 1st Cir. 1965). *Id.* at 1120. *Minks* had previously observed that

> the law has not permitted recovery to one for his own physical disability, loss of earning capacity, or pain and suffering *sustained by him as a result* of either seeing the personal injuries of another, or learning of the death of another, against tortfeasors, who are responsible for the personal injury or death of the other.

*Id.* (emphasis in original). Endorsing this holding, the *Lang* court "decline[d] to extend recovery of these damages under La. [Civ. Code] art. 2315 and reverse[d] that part of the trial judge's judgment awarding [the decedent's mother] damages for her own medical expenses and lost wages." *Id.* at 1120. In reaching its conclusion, the

---

legislature somehow intended to allow for the type of special medical and medical-related damages she now seeks to recover—is misplaced.

Furthermore, to the extent that Mrs. Taylor attempts to rely on the plain text of the statute, she has not cited, and the Court has not identified, a single case from the past 18 years in which special medical and medical-related damages were awarded to a wrongful death claimant pursuant to Article 2315, as amended. Indeed, the Court wonders whether the 1999 amendment is at all applicable to wrongful death claimants, who (unlike toxic tort victims, for example) pursue claims arising from injury caused to another.

7

court noted that it was "obvious from the trial judge's reasoning that he took into consideration [the decedent's mother's] extraordinary suffering in his award of $150,000 in general damages." *Id.*

Shortly after *Lang* was decided, the Louisiana Fifth Circuit Court of Appeals addressed a similar issue. In *Meyers v. Smith*, the decedent was killed when his car was struck by a pick-up truck. 482 So. 2d 60, 62 (La. Ct. App. 5th Cir. 1986). The decedent's wife brought a wrongful death suit and was awarded $7,000 for past and future psychiatric and psychological expenses. *Id.* On appeal, she sought to have this award increased. *Id.* at 63. The *Meyers* court construed the question presented as "whether special damages for medical expenses occasioned [sic] by the grief and anguish of a survivor in a wrongful death action are compensable under La. Civ. Code art. 2315." *Id.* Relying on *Lang*, the court refused to increase the reward.[6] *Id.* It read *Lang* as "declin[ing] to award special damages to [a] survivor for medical costs and lost wages, holding that only general damages are compensable in a survivor's action." *Id.* That proposition, the court held, "correctly set[] forth the law." *Id.*

Similarly, the United States Court of Appeals for the Fifth Circuit has "conclude[d] that *Lang v. Prince* establishes the correct principle of Louisiana law with regard to special damages for psychological care in a wrongful death action." *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1455 (5th Cir. 1990). *Transco* involved wrongful death actions resulting from a midair collision between two

---

[6] The court noted further that it was precluded from reversing the reward entirely because it was not contested on appeal.

8

airplanes. *Id.* at 1438. The district court awarded the wife of one of the decedents $11,605 for post-accident psychological care. *Id.* at 1455. Pointing to *Lang* and *Meyers*, the defendant argued that "under Louisiana law, a separate award for psychological care is not authorized where a plaintiff has already received an award for grief, loss of companionship, etc." *Id.* The Fifth Circuit agreed, holding that "such special damages are not recoverable under Louisiana's wrongful death statute when a general award that includes compensation for grief is given."[7] *Id.*; *see also Dunn v. Consolidated Rail Corp.*, 890 F. Supp. 1262, 1292 (M.D. La. 1995) (holding that, in light of *Lang* and *Meyers*, "plaintiffs may not be compensated for the medical expenses incurred for their post-accident psychological care").

In light of this precedent,[8] the Court concludes that the plaintiff and her children are unable to recover special damages for future medical and medical-related

---

[7] The Court acknowledges that this holding is somewhat murky, insofar as it appears to suggest that special damages might be recoverable if, somehow, a wrongful death claimant were to successfully prove her case but the jury did not return an award of general damages that includes compensation for grief. Should such an unlikely scenario unfold at trial, the Court—to protect the record in the event of an appeal—may permit Mrs. Taylor to put on evidence regarding the life care plans and attempt to prove her claim for special damages, assuming that a proper foundation for such evidence exists. In that event, the Court will reconvene the jury to consider the issue of special damages.

[8] In addition to her efforts to distinguish *Lang*, *Meyers*, and *Transco*, Mrs. Taylor cites two cases in which special damages for medical expenses were awarded.

In *Jones v. Payton*, a three-year-old child was awarded $30,000 for future psychiatric treatment. 548 So. 2d 1260, 1264 (La. Ct. App. 4th Cir. 1989). As the Fifth Circuit noted in *Transco*, however, the child in *Jones* "witnessed his mother's death, and also suffered injuries in the same accident." 896 F.2d at 1455. Moreover,

> "[t]he *Jones* court did not cite any authority for [the portion of its decision awarding the $30,000], and did not attempt

9

care as part of their wrongful death claim. Louisiana law clearly entitles successful wrongful death claimants to an award of general damages. This award, aimed at compensating the claimant for the loss associated with the death of a loved one, may include damages for loss of loss of love, affection, companionship, services, support, medical expenses of the decedent, if any, and funeral expenses. It may also reflect the emotional pain and suffering experienced by the claimant as a result of the decedent's death. Special pecuniary damages for the future care of the claimants, however—particularly those to the tune of $38 million—fall outside of this ambit. Accordingly, Mrs. Taylor and her children cannot recover for their expenses, as detailed in their life care plans, through their wrongful death claim.[9]

---

> to distinguish the previous Louisiana cases [(*Lang* and *Meyers*)] holding to the contrary. Nor did the *Jones* court indicate whether the $30,000 was part of the award for the injuries suffered by the child in the accident, or was an element of the wrongful death damages."

*Id. Jones*, therefore, lends little, if any, support to Mrs. Taylor's argument.

The case most helpful to Mrs. Taylor's position is *Hebert v. Rapides Par. Police Jury*, 934 So. 2d 912, *rev'd in part on other grounds*, 974 So. 2d 635 (La. 2006). There, without any discussion as to the applicable law, the appellate court awarded $25,000 for past and future medical expenses to a husband and wife who lost their daughter. The Louisiana Supreme court reversed the opinion on other grounds, never addressing the $25,000 award. Accordingly, the Court declines to read this single case as a broad endorsement of the general recoverability of claimants' medical and medical-related expenses in wrongful death actions.

[9] In her opposition to VehiCare's motion, Mrs. Taylor argues, for the first time, that she is entitled to recover medical expenses under a claim for negligent infliction of emotional distress. R. Doc. 96, at 11–15.

> Louisiana law does not generally recognize an independent cause of action for negligent infliction of emotional distress. The cause of action is available under limited

II.

In the alternative, Mrs. Taylor argues that, even if the special medical damages detailed in the life care plans for her and her children are not recoverable, the life care plans and the testimony of their authors must be admitted at trial to assist the jury in making a general damages award. The Court has grave concerns regarding the admissibility of such evidence. *See* Fed. R. Evid. 403. At trial, the plaintiff will be able to support her claim for general damages with testimony from

---

> circumstances only. Specifically, Louisiana tort law recognizes a cause of action for negligent infliction of emotional distress only in extraordinary situations, where there is an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious. To state a claim for negligent infliction of emotional distress, a plaintiff must allege the following elements: (1) that an independent, direct duty was owed to plaintiff by defendant; (2) that the duty afforded protection to plaintiff for the risk and harm caused; (3) that the duty was breached; and (4) that the mental anguish suffered by the plaintiff was genuine and serious.

*DirecTV, Inc. v. Atwood*, No. 03-cv-1457, 2003 WL 22765354, at *3 (E.D. La. Nov. 19, 2003) (Englehardt, J.) (quotations and citations omitted).

In the Court's view, this case, though based on a tragic set of facts, is not extraordinary. Nor has Mrs. Taylor pointed to any special circumstances that might give rise to a claim for negligent infliction of emotional distress. Even if she had, the Court cannot discern any direct, independent duty that VehiCare owed to Mrs. Taylor and her children. *Cf. Walker v. Allen Par. Health Unit*, 711 So. 2d 734, 737 (La. Ct. App. 3d Cir. 1998) (finding that a health unit's duty to store used needles so as to protect against inadvertent human exposure was owed to the infant patient, not to his parents, and requiring some other direct, independent duty be shown). VehiCare's only connection to Mrs. Taylor and her children is through Mr. Taylor and his employer, CCD. This connection is insufficient to establish the direct, independent duty required to establish a claim for negligent infliction of emotional distress, which, again, is a narrow tort available in only limited circumstances.

11

medical professionals and other competent individuals. Accordingly, the life care plans and testimony of their authors will not be admitted to prove general damages, although the Court may allow the evidence if, for some reason, Mrs. Taylor successfully proves her claim but the jury does not return a general damages award.

Accordingly,

**IT IS ORDERED** that VehiCare and CCC's motion for partial summary judgment is **GRANTED**.

New Orleans, Louisiana, November 2, 2017.

                                                   **LANCE M. AFRICK**
                                    **UNITED STATES DISTRICT JUDGE**